## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ADRIAN D. SHARPER**

**VERSUS**

**RIGHT AWAY MAINTENANCE COMPANY**

**CIVIL ACTION**

**NO. 22-560-SDJ**

## RULING AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Right Away Maintenance Company, L.L.C., on December 15, 2023 (R. Doc. 41). Plaintiff Adrian Sharper filed an Opposition to RAMCO's Motion (R. Doc. 42), to which RAMCO filed a Reply (R. Doc. 43). Oral argument on this Motion is not necessary. Having considered the Motion, supporting memoranda, and exhibits; Plaintiff's Opposition; and applicable legal authorities, the Court finds that, because genuine issues of material fact exist with regard to Plaintiff's Title VII claims, RAMCO is not entitled to summary judgment. As set forth below, RAMCO's Motion for Summary Judgment is denied.

### I.     BACKGROUND

#### A.     Undisputed Facts

The following facts are taken from RAMCO's Statement of Uncontested Material Facts (R. Doc. 41-2) and deemed admitted pursuant to Local Civil Rule 56(f), due to Plaintiff's failure to submit a responsive opposing statement of material facts that meets the requirements of Local Civil Rule 56(c).[1]

---

[1] "To guide the parties in their preparation of summary judgment papers, and to minimize the burden on the Court when reviewing summary judgment motions, the Local Rules provide detailed instructions governing summary judgment practice." *Transp. & Logistical Servs., Inc. v. H & E Equip. Servs., Inc.*, No. 21-118, 2022 WL 842858, at

Plaintiff began working at RAMCO on October 9, 2017, as a Laborer with a starting pay of $17.00 per hour.[2]  In June 2019, Plaintiff was given a raise to $18.00 per hour and promoted to the job classification of Operator/Foreman.[3]  When Plaintiff was hired, his immediate supervisor was Mike Watson; however, Jason Adams became Plaintiff's immediate supervisor in or around August 2019.[4]

On January 9, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission.[5]  In that Charge of Discrimination, Plaintiff claims RAMCO discriminated against him based on his race, in violation of Title VII of the Civil Rights Act of 1964.[6]  The EEOC, on July 19, 2022, issued a Determination and Notice of Rights letter to Plaintiff.[7]  Plaintiff did not report the alleged harassment or discrimination to any member of RAMCO's management, pursuant to company policy.[8]

## B.    Relevant Procedural History

Plaintiff, an African-American, initiated this action on August 16, 2022, initially proceeding *pro se*.  In his Complaint, Plaintiff alleges that he was harassed and discriminated against and that his employment was ultimately terminated, all based on his race in violation of Title VII.[9]  Plaintiff later retained counsel and filed an Amended Complaint, in which he asserts

---

*1 n.1 (M.D. La. Mar. 21, 2022).  "These Local Rules carry the force of law, and a party that disregards them does so at its own peril." *Id.*, citing *CMFG Life Ins. Co. v. Lee*, 2021 WL 1395768, at *1 (M.D. La. April 13, 2021).  According to Local Civil Rule 56(c), "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts.  The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule."  Here, Plaintiff failed to provide a responsive statement of material facts.
[2] R. Doc. 41-2 at 1 ¶ 4; R. Doc. 41-3 at 3 ¶ 20.
[3] R. Doc. 41-2 at 2 ¶ 7; R. Doc. 41-3 at 4 ¶ 23.
[4] R. Doc. 41-2 at 1-2 ¶¶ 5-6; R. Doc. 41-3 at 3-4 ¶¶ 21-22.
[5] R. Doc. 41-2 at 2 ¶ 8; R. Doc. 41-4 at 1-8.
[6] R. Doc. 41-4 at 1.
[7] R. Doc. 41-2 at 2 ¶ 9; R. Doc. 41-3 at 5 ¶ 43.
[8] R. Doc. 41-2 at 2 ¶ 10; R. Doc. 41-3 at 6 ¶ 47.
[9] R. Doc. 1.

claims of a hostile work environment and disparate treatment, again in violation of Title VII.[10]  On December 15, 2023, RAMCO filed the instant Motion for Summary Judgment, which is opposed.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Stated another way, "[i]f the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by showing that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim."  *Garcia v. LVNV Funding LLC*, No. 08-514, 2009 WL 3079962, at *2 (W.D. Tex. Sept. 18, 2009).  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Vanberge v. Haley*, No. 19-814, 2021 WL 400511, at *1 (M.D. La. Jan. 15, 2021), *report and recommendation adopted sub nom.*, 2021 WL 400537 (M.D. La. Feb. 4, 2021), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmoving party satisfies this

---

[10] R. Doc. 24.

burden "by submitting or referring to evidence, [which] set[s] out specific facts showing that a genuine issue exists." *Garcia*, 2009 WL 3079962, at *2.

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 requires that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075. In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**B.      Analysis**

In its Motion for Summary Judgment, RAMCO claims that it is entitled to summary judgment on both Plaintiff's hostile work environment and disparate treatment claims. The Court addresses each of these, in turn, below.

**1.      Plaintiff's Hostile Work Environment Claim**

"Where a harassment claim arises out of a supervisor's conduct, there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic; and (4) that the harassment affected a term, condition, or privilege of

employment." *George v. Fresenius Med. Care N.A.*, No. 15-14, 2016 WL 4944130, at *9 (M.D. La. Sep. 15, 2016), quoting *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (internal quotations and modifications omitted). To establish a hostile work environment claim, the plaintiff must prove that his or her work environment "was permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment." *Jackson v. Honeywell Int'l, Inc.*, 601 F.App'x 280, 287 (5th Cir. 2015), citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *Boh Bros.*, 731 F.3d at 453.

"Workplace conduct is not measured in isolation; instead, we look to: (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether it was physically threatening or humiliating as opposed to mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the workplace undermines the plaintiff's workplace competence." *George*, 2016 WL 4944130, at *9, quoting *Jackson*, 601 F.App'x at 287. "Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations and citation omitted). In addition, "[i]n hostile environment harassment cases based upon racial discrimination where the harassment is allegedly committed by a supervisor with immediate authority over the victim, the plaintiff employee need only satisfy the first four elements set out above." *Stewart v. May Dep't Stores*, 294 F.Supp.2d 841, 846 (M.D. La. 2003).

Plaintiff, in his deposition, testified, among other things, that his supervisor, Jason Adams, had referred to Plaintiff as "a stupid fucking nigger" to one of Plaintiff's co-workers, Tarence

Fisher.[11]    RAMCO argues that this single instance is not sufficient to prove a hostile work environment both because "Plaintiff's allegation that his manager used a racial slur outside of his presence is simply insufficient to prove any racial animus on the part of RAMCO" and because the evidence supporting Plaintiff's accusation is hearsay and not properly before the Court.[12]

The Court turns first to the question of whether the use of a racial slur outside the presence of Plaintiff is sufficient to prove racial animus on the part of RAMCO.  Recently, the Fifth Circuit has held that a "[single] incident" of a supervisor calling an employee the N-word could and did state an actionable claim of hostile work environment in violation of Title VII.  *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (describing the racial epithet as "a term that sums up ... all the bitter years of insult and struggle in America, [a] pure anathema to African-Americans, [and] probably the most offensive word in English.").  In *Woods*, a supervisor called the plaintiff "a 'Lazy Monkey A__ N____' in front of his fellow employees."  *Id.* at 285.  The Fifth Circuit, while recognizing that "this court has indicated that a single instance of a racial epithet does not, in itself, support a claim of hostile work environment," also recognized that "[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates."  *Id.* (internal quotations and citations omitted).  The Fifth Circuit concluded that "[t]he incident Woods has pleaded—that his supervisor directly called him a 'Lazy Monkey A__ N____' in front of his fellow employees—states an actionable claim of hostile work environment."  *Id.*

In its Reply, RAMCO attempts to distinguish the holding in *Woods* from the instant case, noting that here, "the purported utterance was not used by Mr. Adams in the presence of the

Plaintiff, but rather Terence Fisher."[13]  The Court acknowledges that the racial slur was not made in the presence of Plaintiff.  However, it was made about Plaintiff in front of his fellow employee.  Given the strength of the language used by the Fifth Circuit in its ruling, the Court finds that this distinction—that it was made at Plaintiff's place of work to a subordinate about Plaintiff rather than being made at Plaintiff's place of work to Plaintiff in front of subordinates—is one without a difference.

RAMCO next argues that the evidence provided by Plaintiff in support of this incident is not competent summary judgment evidence.  In addition to testifying that Adams made a racial slur against him, Plaintiff provided the Court and defense counsel with an audio recording of a statement by Tarence Fisher, in which Fisher states that on September 5th "mid-morning," Jason Adams referred to Plaintiff as "a stupid fucking nigger."  Attached to Plaintiff's Opposition is a sworn affidavit signed by Tarence Fisher in which he swears that the contents of the recording are true and confirms that he heard Jason Adams use the aforementioned racial slur in reference to Plaintiff.[14]  RAMCO, in its Reply, takes issue with the recording and sworn statement, contending that they are hearsay and not properly sworn.[15]

The Court agrees that the sworn statement, which certifies the recording, is not properly sworn.  While it was signed by Fisher, it is not properly notarized.  *See Cannon v. Southern Univ. Bd. of Supervisors*, No. 17-527, 2019 WL 2656209, at *3 (M.D. La. Jun. 27, 2019).  Thus, the Court cannot consider this evidence in support of Plaintiff's assertion.  However, the Court finds that Plaintiff's deposition testimony, which is properly before the Court, provides sufficient evidence of the incident.  Plaintiff testifies that "[s]ometime in September, Mr. Tarence Fisher

---

[13] R. Doc. 43 at 7-8.
[14] R. Doc. 42-5.
[15] R. Doc. 43 at 5.

informed me that Mr. Jason Adams referred to me as a stupid fucking nigger tearing up our equipment."[16]  This statement contains two potential layers of hearsay, and the Court recognizes that hearsay is not competent summary judgment evidence unless its proponent can show that the statement can be presented in an admissible form at trial.  *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 218 (5th Cir. 2024), citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); *Patel v. Texas Tech Univ.*, 941 F.3d 746 (5th Cir. 2019).  Here, the proffered testimony is admissible.  First, the statement made by Adams to Fisher is not being presented for the truth of the matter asserted.  Thus, it is not hearsay.  *See* F.R.E. 801(c)(2) (defining hearsay as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement").

Similarly, the statement by Fisher to Plaintiff also is not hearsay.  Federal Rule of Evidence 801(d)(2)(D) specifies that a statement offered against an opposing party made by the party's agent or employee on a matter within the scope of that relationship while it existed is not hearsay.  *See also Henderson v. Black Elk Energy Offshore Operations, LLC*, No. 15-1024, 2018 WL 2100326 at *2 (S.D. Tex. May 7, 2018) (finding statements made by employee of defendant not hearsay based on F.R.E. 801(d)(2)(D)).  Fisher, who was employed as a mechanic with RAMCO at the time, repeated the statement to Plaintiff within the scope of their employment relationship.[17]  This evidence, therefore, is not hearsay and can be considered by the Court.

Based on the Fifth Circuit's holding in *Woods, supra*, the Court finds Plaintiff has presented sufficient evidence for his claim of hostile work environment to survive summary

---

[16] R. Doc. 41-8 at 8 (28:17-20).

[17] At the time Adams allegedly made the statement to Fisher, Fisher was working as a mechanic at RAMCO.  R. Doc. 41-8 at 9 (29:23-30:4) ("Allegedly, he accused me of damaging equipment.  And because he felt like I damaged the equipment, he needed to have the mechanic, Mr. Tarence Fisher, come out I guess to take a look at the equipment.  So in order to get him out there, he referred to me as that stupid fucking nigger.").  Per Plaintiff, the incident occurred and Plaintiff was told of same in September 2019.  R. Doc. 41-8 at 8-9 (28:24-29:5).

judgment.[18]  At the very least, this evidence, taken together with the affidavit of Jason Adams, in which Adams swears he has "never used the N-word toward Mr. Sharper, around Mr. Sharper, or to any other person while discussing Mr. Sharper"[19] raises a genuine issue of material fact, prohibiting a finding of summary judgment on this claim.[20]

Finally, RAMCO also argues that because Plaintiff failed to report any alleged harassment to his supervisor, Adams, or any other member of RAMCO's management, he cannot prove the fifth element of a hostile work environment claim, namely, though stated differently above, that the employer knew or should have known of the harassment and failed to take prompt remedial action.[21]  *See Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001).  However, as specified above, "[i]n hostile environment harassment cases based upon racial discrimination where the harassment is allegedly committed by a supervisor with immediate authority over the victim, the plaintiff employee need only satisfy the first four elements." *Stewart*, 294 F.Supp.2d at 846.  As such, because Adams was Plaintiff's supervisor, a fact not disputed by either Party, Plaintiff is not required to prove this element in establishing a hostile work environment claim, and RAMCO is not entitled to summary judgment on this issue.

---

[18] Plaintiff also provides additional evidence regarding the use of racial slurs at RAMCO.  In his deposition, he testified that one day he "came through the back door of the shop and [his co-workers] started using the N word and Mr. Adams was present and he saw them using the N word," but that "he didn't do anything …. [and] just went back into the office."  R. Doc. 41-8 at 19 (69:4-8).  Plaintiff continues that "at the next safety meeting, all the employees was forbidden from using the N word with the threat of termination."  *Id.* (69:9-11).  However, as the Court finds the alleged incident involving Adams, discussed above, alone sufficient to keep Plaintiff's hostile work environment claim alive at this stage of the litigation, the Court does not further address this second incident involving the use of racial slurs toward Plaintiff.

[19] R. Doc. 41-9 at ¶ 8.

[20] The Court recognizes that Plaintiff raises other arguments and provides additional evidence in support of his claim of a hostile work environment.  However, the Court finds analysis of this single incident sufficient to find that RAMCO is not entitled to summary judgment on this issue.

[21] R. Doc. 43 at 7.

### 2.    Plaintiff's Disparate Treatment Claim

For disparate treatment claims, the *McDonnell Douglas* framework requires a plaintiff to first establish a *prima facie* case of discrimination by demonstrating: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) that other, similarly situated co-workers outside the protected class were treated differently. *Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007), citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2001). Once established, the burden shifts to the defendant to "produce admissible evidence that [its] decisions were based on legitimate, nondiscriminatory reasons." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012); *see also McDonnell Douglas Corp. v. Green*, 411 U.S.792, 802 (1973). If the defendant carries its burden, the plaintiff must then prove by a "preponderance of the evidence that the legitimate reasons offered ... were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Turner*, 675 F.3d at 892, quoting *Burdine,* 450 U.S. at 253. "The prima facie case is necessarily a flexible standard that must be adapted to the factual circumstances of the case." *Id.*, citing *Burdine*, 450 U.S. at 253 n.6; *McDonnell Douglas,* 411 U.S. at 802 n.13. "Nonetheless, '[t]he prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's [discipline].'" *Id.*, quoting *Burdine,* 450 U.S. at 253–54. "[T]he prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.*, quoting *Burdine*, 450 U.S. at 254.

a.     **Whether Plaintiff Has Established a Prima Facie Case of Disparate Treatment**

In its Motion for Summary Judgment, RAMCO states that "[t]he first two elements … are not in dispute."[22]  Subsequently, in its Reply, RAMCO specifically states that it "does not dispute that Plaintiff meet elements 1) and 3) of the prima facie case."[23]  RAMCO continues, "Plaintiff is African-American, a protected class, and as he was fired, he suffered an adverse employment action."[24]  Rather, RAMCO argues that Plaintiff has not and cannot show that another similarly situated person outside his protected class was treated more favorably and that Plaintiff was dismissed for legitimate, non-discriminatory reasons.[25]

To establish the fourth element, a plaintiff must show that employees who were not members of the plaintiff's protected class were treated differently under circumstances "nearly identical" to his.  *Turner*, 675 F.3d at 893, quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).  In arguing that other similarly situated people outside of his protected class were treated more favorably than him, Plaintiff claims that he was denied the right to work when others were working, that he was replaced by someone outside his protected class when he was allowed to return to work, that he was denied the opportunity to perform in his full capacity as Operator/Foreman, and that he was denied privileges otherwise afforded to an Operator Foreman. RAMCO denies these allegations, which the Court will address, in turn.

---

[22] R. Doc. 41-1 at 9-10.  The Court notes that RAMCO then argues that "Plaintiff cannot establish that he was qualified for his position."  R. Doc. 41-1 at 10.  RAMCO then goes on to explain that Plaintiff was paid as well as or better than other employees at Plaintiff's level.  *Id.* at 10-11.  To the Court, the fact that RAMCO paid Plaintiff better than other employees at his level is evidence that Plaintiff was, in fact, qualified for his position.  Plaintiff also testified about his qualifications in his deposition.  *See, e.g.,* R. Doc. 41-8 at 3-4 (8:13-11:25).  And Plaintiff was promoted and given a raise while working at RAMCO.  R. Doc. 41-3 at 4 ¶ 23.  Based on this evidence, the Court finds this element of Plaintiff's prima facie case established.
[23] R. Doc. 43 at 2.
[24] *Id.*
[25] R. Doc. 41-1 at 10.

In his Amended Complaint, Plaintiff alleges that, a few days after Adams allegedly made the racial slur discussed above, Adams "ceased assigning [] work" to Plaintiff."[26]  Plaintiff alleges that he was not assigned work between September 10 and September 16, 2019, and, therefore, received no compensation from RAMCO for that time period.[27]  In support, Plaintiff provides screen shots of text message from Adams to Plaintiff, with Adams saying "No work for you today" on September 10, 12, and 16, 2019.[28]  Plaintiff responded, asking if he was the only person not working, to which Adams replied that "Brian" and "Van" also were not working.[29]  According to an employee list provided by Plaintiff, "Brian" is Brian Arceneaux, a "Groundman/Helper," and "Van" is Glenn Van, also a "Groundman/Helper."[30]  As explained by RAMCO, it has three main job classifications for hourly employees: Ground Hand/Laborer, Operator, and Foreman.[31]  Additionally, Plaintiff testified that he did not work with any other African-American employees at the location where he was assigned.[32]  Thus, according to this evidence, Plaintiff, who was an "Operator/Foreman" per the employee list,[33] was the only Operator/Foreman, which is a higher position than Ground Hand/Laborer, not working, meaning the other Caucasian Operator/Foremen were working.[34]

---

[26] R. Doc. 24 at 4 ¶ 20.
[27] *Id.*
[28] R. Doc. 42-4.
[29] *Id.*
[30] R. Doc. 42-2.
[31] R. Doc. 41-3 at 1 ¶ 7.
[32] R. Doc. 41-8 at 7 (22:4-9).
[33] R. Doc. 42-2.
[34] Plaintiff also claims that when he returned to work after this hiatus, he was replaced as Foreman by a Caucasian worker, Marshall Ramagos.  The Court finds this particular argument without merit here, as Mr. Ramagos was a Heavy Equipment Operator, which, per RAMCO, is a higher position than Foreman, the position held by Plaintiff. As such, Plaintiff and Mr. Ramagos were not similarly situated.

RAMCO responds that other similarly situated employees[35] outside of his protected class were not treated more favorably than Plaintiff because "Plaintiff was paid as well as or better than other employees not in his protected class."[36]  RAMCO continues by providing a breakdown of the time Plaintiff and his co-employees spent working in each job classification—Foreman, Operator, Laborer, and Non-billable.[37]  RAMCO concludes that Plaintiff worked a greater percentage of his total hours as a Foreman than two other employees, worked a greater percentage of his total hours as an Operator than four other employees, and worked a lesser percentage of his total hours as a Laborer than did two other employees, none of whom are in Plaintiff's protected class.[38]  While the Court does not dispute the validity of RAMCO's information, it does not adequately refute Plaintiff's allegation that he was not allowed to work while other similarly-situated employees were.

Plaintiff also argues that he was denied the opportunity to perform in his full capacity as Operator/Foreman.  In his deposition, Plaintiff testified that he "was never appointed a position as a foreman."[39]  Plaintiff continues he "was given a job title, but … wasn't given the opportunity to do the job" and believes it was because "RAMCO just didn't want any black foremans anymore."[40]  While the Court can surmise that other Foremen outside of Plaintiff's protected category were allowed to actually serve as Foremen, the only instance Plaintiff specifically discusses is when he worked on a project where Marshall Ramagos served as foreman.  Plaintiff alleges that he had to train Ramagos and that he completed Ramagos's paperwork duties and GPS readings for him,

---

[35] The Court questions whether all the employees were, in fact, similarly situated to Plaintiff, as some of them held different positions than Plaintiff.  *See* R. Doc. 42-2.  However, as the Court finds this evidence insufficient, as discussed below, it finds this issue of no consequence here.
[36] R. Doc. 41-1 at 16.
[37] *Id.*  It is not disputed that although employees at RAMCO held certain job classifications, they worked across other job classifications, as needed.  *See* R. Doc. 41-3 at 2 ¶ 10; R. Doc. 42 at 8.
[38] R. Doc. 41-1 at 17.
[39] R. Doc. 41-8 at 17 (62:21-22).
[40] *Id.* (62:23-63:3); *see also id.* (63:13-20).

which were responsibilities of the Foreman.[41]   However, Marshall Ramagos was classified as a Heavy Equipment Operator, a higher classification than Operator/Foreman, which was Plaintiff's classification.[42]   As such, the Court finds that on the evidence and arguments presented, this claim does not support Plaintiff's argument of disparate treatment.

Plaintiff next argues that he was denied privileges otherwise afforded to an Operator/Foreman.   More specifically, Plaintiff claims that although he was given a company truck to drive when he was promoted to Foreman, he was not allowed to take the truck home, while other Caucasian Foremen, including Sam Moody, Joseph Bayhi, and Jacob Dedon, were allowed to take their trucks home.[43]   In addition, Plaintiff testified:[44]

> When I became foreman, I was issued a truck #88.   I was instructed I couldn't take the truck home like the rest of the foremans was allowed to do.   They drove the truck back and forth to work.   When I became foreman, I was told I couldn't drive the truck home….   Mr. Adams told me that the company was no longer permitting that and that no one would be driving vehicles back and forth to work.   However, they continued to drive the vehicles back and forth to work.

RAMCO, in response, states that the decision by RAMCO Operations "to issue company trucks to operators and/or other employees is based on multiple issues" and "may change on a case-by-case basis."[45]   RAMCO further asserts that "[m]any other employees were unable to take their work vehicles home," though no evidence to support this assertion is provided.[46]   RAMCO also states that, per Adams's affidavit, "Plaintiff never asked if he could take his vehicle home," and "Mr. Adams did not offer this to the Plaintiff due to there not being a need, and Plaintiff did not request it."[47]

---

[41] R. Doc. 41-8 at 12 (42:5-13; 43:17-24).
[42] *See* R. Doc. 41-3 at 4 ¶ 28.
[43] R. Doc. 1-1 at 1.
[44] R. Doc. 41-8 at 10-11 (36:22-37:11).
[45] R. Doc. 41-1 at 17-18.
[46] *Id.* at 18.
[47] R. Doc. 41-1 at 18; R. Doc. 41-9 ¶ 6 ("I was in charge of issuing out employee vehicles and Mr. Sharper never asked me to take his vehicle home, nor did I see a necessity for him to do so.").

Plaintiff, however, specifically controverts that, having testified during his deposition that the other foremen employed at the time—Jospeh Bayhi, Jacob Dedon, and Marshall Ramagos—continued to drive their work trucks to and from home each day.[48]  Plaintiff also testified that he asked Adams if he could take his vehicle home and was told by Adams that it was no longer permitted.[49]  As such, the Court finds that a genuine issue of material facts exists here as to whether Plaintiff requested this privilege be extended to him and, if so, why it was denied.

Here, keeping in mind the Fifth Circuit's express determination that establishing a prima facie case of disparate treatment is "not onerous," *Turner*, 675 F.3d at 892, and looking at "the totality of the relevant facts," *Washington v. Davis*, 426 U.S. 229, 242 (1976), the Court finds that Plaintiff has met his burden of establishing a prima facie case of race discrimination.  As such, the burden shifts to RAMCO to "produce admissible evidence that [its] decisions were based on legitimate, nondiscriminatory reasons." *Turner*, 675 F.3d at 900.

### b.    Whether RAMCO Has Established Legitimate, Non-Discriminatory Reasons for Plaintiff's Termination

In its Motion for Summary Judgment, RAMCO argues that Plaintiff was terminated for legitimate, non-discriminatory reasons.  In support of its assertion, RAMCO relies on statements of various employees as well as a Near Miss/Hazard Report regarding an incident involving Plaintiff.[50]  According to Travis David, President and CEO of RAMCO, Plaintiff was terminated "due to insubordination, poor attitude, poor work performance, and damage to equipment through improper usage."[51]  Five separate employee statements, sworn to by Mr. David as those obtained during an investigation into the charges made by Plaintiff in his EEOC Charge, support RAMCO's

---

[48] R. Doc. 41-8 at 11 (37:7-24).
[49] *Id.* (37:25-38:5).
[50] R. Doc. 41-1 at 5.
[51] R. Doc. 41-3 at 5 ¶ 41.

position.[52]  In a statement dated January 27, 2020, RAMCO Foreman Steven Landry stated that Plaintiff, who was part of Landry's crew, "did not want to perform any labor work" and "would say that he was strictly a tractor operator and was not a laborer."[53]  He also stated that Plaintiff "would take the longest amount of time possible to put on his PPE" and "that by the time he was done gearing up, we had already complete[d] the job."[54]  Landry continued that Plaintiff "had a poor attitude with everyone on the crew, including the customer," resulting in Plaintiff being taken off that crew and placed elsewhere.[55]

Similarly, RAMCO Safety Director Clint Guidry reported on an incident that occurred on May 5, 2019, when, during a safety meeting on tractor operational safety, Guidry "explained that 'getting a tractor stuck isn't normal operating procedure.'"[56]  Per Guidry, Plaintiff became argumentative and repeatedly stated, "I am a tractor operator and I have gotten tractor [sic] stuck many times."[57]  Plaintiff "continued to respond the he didn't care what the operations manual said and that getting a tractor 'stuck' was part of the job."[58]  Guidry expressed that he viewed getting a tractor stuck as an "incident" and then ended the discussion and meeting.[59]

Jason Adams, Operations Manager for RAMCO and Plaintiff's supervisor, stated that "[t]here have been multiple instances of insubordination by Mr. Sharper," including one in which Plaintiff refused to use a particular tractor, which was in operable condition, because Plaintiff "did

---

[52] *Id.* at 5-6 ¶ 45.
[53] R. Doc. 41-4 at 9.
[54] *Id.*
[55] *Id.*
[56] R. Doc. 41-4 at 10.
[57] *Id.*
[58] *Id.*
[59] *Id.*

not like to run that tractor."[60]  Adams also recounted an incident where Plaintiff did not complete

a job in the way RAMCO was being paid to do it, instead "sit[ting] in the truck for over an hour."[61]

Tommy Constant, in Business Development for RAMCO, reported on two incidents

involving Plaintiff.  The first occurred in spring 2019 when Constant was contacted by a customer

representative who stated that one crew member was not keeping up with the others, "causing a

lack of productivity."[62]  Plaintiff was working as part of a mowing crew at that time.[63]  When

Constant arrived at the site, "2 of the 3 crew members began working and Mr. Sharper remained

at the truck and began putting on his PPE and seemed to be taking an extra long time to attempt

an effort to help the crew."[64]  Once the work was complete, Plaintiff "began taking off his PPE

while other members loaded equipment to move to next [sic] site."[65]  The "company rep" asked

that Plaintiff be replaced.[66]

The second incident took place in August 2019, when the tractor Plaintiff was operating

developed an oil leak.[67]  Plaintiff attempted to load the tractor onto a trailer "while it was not on

level ground."[68]  Constant "noticed that the tractor was sliding off of the trailer and … screamed

for [Plaintiff] to stop."[69]  Another person who witnessed the incident "used his winch cable to help

keep the tractor from falling off of the trailer and pull the tractor to a safe position."[70]  When

---

[60] R. Doc. 41-4 at 11.
[61] Id.
[62] R. Doc. 41-4 at 12.
[63] Id.
[64] Id.
[65] Id.
[66] Id.
[67] Id.
[68] Id.
[69] Id.
[70] Id.

Guidry confronted Plaintiff about loading a tractor on a trailer while on uneven ground, Plaintiff responded "that he ha[d] done it many times and he [would] continue to do so."[71]

Patrick Landry, a RAMCO shop mechanic, stated that toward the end of summer 2019, Plaintiff brought a damaged tractor to the shop.[72]  When Landry continued with a conversation he had been having with another worker prior to Plaintiff's arrival, Plaintiff asked Landry why Landry did not acknowledge him because he was a supervisor and Landry should know who he was.[73] Landry continues that Plaintiff became increasingly agitated and commented that he was being ignored and that Landry was only "bull shitting" with the other worker.[74]  At that point, Landry called Vaughn Tabor, Operations Manager, to let him know about the situation, and Mr. Tabor arrived 10 to 15 minutes later.[75]  After Mr. Tabor talked to him, Plaintiff offloaded the damaged tractor, reloaded a different one, and then apologized to Landry before leaving.[76]

In addition to these statements, RAMCO cites to a Near Miss/Hazard Report dated August 19, 2019, reported by Tommy Constant and Jason Adams, pertaining to the incident mentioned above concerning the tractor sliding off the trailer.[77]  The "Description" of the near miss/hazard is as follows:[78]

> Employee attempting to load tractor leaking hydraulic fluid onto unleveled trailer. Tractor partially slid off trailer and had to be pushed back with sky trim.  Tractor was then strapped down and transported to Gray shop for repairs.

Plaintiff subsequently was terminated on October 8, 2019.[79]

---

[71] *Id.*
[72] R. Doc. 41-4 at 13.
[73] *Id.*
[74] *Id.*
[75] *Id.*  Vaughn Tabor corroborates Landry's account in his own statement.  R. Doc. 41-4 at 14.
[76] *Id.*
[77] R. Doc. 41-4 at 15.
[78] *Id.*
[79] R. Doc. 41-3 at 5 ¶ 41.

In its Motion for Summary Judgment, RAMCO asserts that "Plaintiff's termination was precipitated by the incidents described in the Employee Statements and other occurrences, not by any racially-motivated animus."[80]   Per RAMCO, "Plaintiff was terminated because of insubordination, poor attitude, poor work performance, and damage to equipment through improper use."[81]   The Court finds that RAMCO has provided sufficient evidence that Plaintiff was terminated for legitimate, non-discriminatory reasons.   Because RAMCO has carried its burden, the burden now shifts to Plaintiff to produce sufficient evidence that the legitimate reasons offered were a pretext for discrimination.   *Burdine*, 450 U.S. at 253.

### c.   Whether Plaintiff Has Demonstrated That the Reasons Offered by RAMCO Were a Pretext for Discrimination

If a defendant meets its burden of production in demonstrating a legitimate, non-discriminatory reason for its decision to terminate the plaintiff, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motives alternative).'"   *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F.Supp.2d 854, 865 (M.D.N.C. 2003) (modification omitted).   "A plaintiff may establish pretext by showing that a discriminatory motive was more likely the motive for his employer's decision, through evidence of disparate treatment, or by showing that his employer's explanation is unworthy of credence."   *Redford v. KTBS, LLC*, 135 F.Supp.3d 549, 560 (W.D. La. Sep. 28, 2015), citing *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th

---

[80] R. Doc. 41-1 at 6.
[81] *Id.*

Cir. 2013).  "The fact finder 'may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual.'"  *Id.*, quoting *Evans v. City of Bishop*, 238 F.3d 586, 590 (5th Cir. 2000) (internal quotations omitted).  "The plaintiff bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against him because of his protected status."[82]  *Id.*

In arguing pretext, Plaintiff first addresses the statement made by Steven Landry, which alleged that after Landry complained to Mike Watson[83] about Plaintiff, Plaintiff was "kicked off his crew."[84]  Per Plaintiff, despite Landry making a complaint, that information "was not shared with the Plaintiff," and, more importantly, Plaintiff subsequently was promoted.[85]  Thus, after being removed from a work crew, Plaintiff was promoted to the position of Foreman.

Plaintiff next argues that RAMCO has presented no evidence that Plaintiff "was ever counseled or disciplined for his alleged offenses."[86]  *See Perkins v. Mgmt. & Training Corp.*, No. 21-55, 2022 WL 17365251, at *4 (S.D. Miss. Dec. 1, 2022) ("Although the Court does not conclude that the general absence of pre-demotion reprimands demonstrates pretext, Plaintiff's allegations create genuine issues of material fact as to pretext…").  Plaintiff also points out the lack of evidence that the Near Miss report was ever shared with him prior to the filing of his EEOC claim.[87]  Plaintiff continues that he was the only African-American Operator/Foreman and that his

---

[82] The Court notes that while a plaintiff ultimately bears the burden of proving pretext to the finder of fact, it is not the Court's place during summary judgment to make credibility determinations or weigh the evidence at hand. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir.2000).  It is *the job of a jury* to choose among conflicting evidence and make credibility determinations.  *Id.*

[83] Plaintiff testified in his deposition that Mike Watson was Plaintiff's first supervisor at RAMCO; he supervised Plaintiff until July or August 2019 when his tenure with RAMCO ended.  R. Doc. 41-8 at 7 (23:19-24:1).  Watson also was the person who promoted Plaintiff to the position of Foreman.  *Id.* at 17 (63:7-10).

[84] R. Doc. 42 at 10.

[85] *Id.*

[86] *Id.*

[87] *Id.*

accusers all are Caucasian.[88]  Per Plaintiff, "management did not want a black foreman," and Adams targeted Plaintiff from the time he became Plaintiff's supervisor, which occurred "in or around August 2019."[89]  Further, as discussed in more detail above, Adams used a racial slur to refer to Plaintiff following the incident with the tractor and heard RAMCO employees using the same racial slur in his presence and did nothing to stop it at the time.  The Court notes that Plaintiff was promoted by Mike Watson to the position of Operator/Foreman in June 2019, that Adams became his supervisor in August of 2019, and that he was fired approximately two months later on October 8, 2019.[90]  And finally, while one of the alleged reasons for the termination of Plaintiff's employment was "damage to equipment through improper usage," RAMCO has presented no evidence of damage to property.  Assuming said alleged damage occurred during the tractor-loading incident, neither the Near Miss/Hazard Report nor any of the employee statements reference any damage to property.  As such, the Court finds that Plaintiff has shown the existence of a genuine issue of material fact as to whether "another motivating factor" for Plaintiff's dismissal was his race.  *See Perkins*, 2022 WL 17365251, at *4 (finding "genuine issues of material fact as to pretext that pretermit summary judgment of the Title VII discrimination claim").  As such, RAMCO is not entitled to summary judgment on Plaintiff's disparate treatment claim.

## III.  CONCLUSION AND RECOMMENDATION

Based on the foregoing,

**IT IS ORDERED** that the Motion for Summary Judgment filed by Defendant Right Away Maintenance Company, L.L.C., be **DENIED**.

---

[88] *Id.*
[89] *Id.*; R. Doc. 41-3 at 4 ¶ 22.
[90] R. Doc. 41-3 at 4 ¶ 23; *id.* at 5 ¶ 41.

**IT IS FURTHER ORDERED** that RAMCO substitute properly redacted copies of certain exhibits to its Motion for Summary Judgment, which violate Federal Rule of Civil Procedure 5.2(a), **within seven (7) days** of the date of this Order.

Signed in Baton Rouge, Louisiana, on May 8, 2024.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**